IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANNAMALAI ANNAMALAI,

                                            Petitioner,                        OPINION and ORDER

   v.

                                                                                    24-cv-204-jdp

WARDEN EMMERICH,

                                            Respondent.

---

Petitioner Annamalai Annamalai, who is incarcerated at FCI Oxford, has an extensive history of abusive litigation in federal and state courts. In response to the court's order to amend, Annamalai brings an amended petition under 28 U.S.C. § 2241. Dkt. 5. Annamalai is seeking restoration of good-conduct time based on allegations that Bureau of Prisons officials unlawfully disciplined him, and he is proceeding without counsel. Respondent answered the amended petition, and Annamalai submitted a reply. Dkt. 26 and Dkt. 47.

The evidence shows that Annamalai directed his son, Ashok Annamalai, to facilitate a three-way call with Annamalai's sister-in-law, Deepa. That call led to an incident report alleging that Annamalai violated BOP policy by circumventing staff's ability to monitor the frequency of his telephone use. Annamalai received ample notice of the disciplinary charge and had an opportunity to contest the charge at a disciplinary hearing. The disciplinary record, which includes a transcript of the call, conclusively shows that Annamalai received all the process he was due, and that his violation of BOP policy, not retaliatory animus, led to the incident report. I will deny the petition, and I will rule on Annamalai's other pending motions.

BACKGROUND

Annamalai was convicted in the Northern District of Georgia of several offenses, including bank fraud, conspiracy to commit bank fraud, filing a false federal income tax return, and making a false statement under oath in a bankruptcy proceeding. *See Annamalai v. Emmerich*, No. 24-cv-678-jdp, 2024 WL 4625803, at *1 (W.D. Wis. Oct. 30, 2024) ("*Annamalai I*"). Annamalai has a projected release date of October 12, 2028.

**A.  State-law breach-of-contract action**

In April 2017, while in federal custody, Annamalai brought a breach-of-contract action in Vigo County, Indiana against a sole private defendant, Vishal Kalyani. *See* docket sheet in Vigo County (Ind.) Superior Court case no. 84D02-1704-MI-2768.[1] Apparently, Annamalai based his breach-of-contract claim on allegations that, "after he was convicted more than a decade ago, at least 169 persons and entities looted and or sold, transferred, and absconded with property that [Annamalai] alleges he owned." *Annamalai v. Montgomery Cnty. Treasurer* ("*Annamalai II*"), No. 24-cv-268, 2024 WL 4599935, at *4 (S.D. Ohio Oct. 29, 2024), *report and recommendation adopted*, 2024 WL 4881269 (S.D. Ohio Nov. 25, 2024).

In November 2020, Annamalai obtained a purported "final order of specific performance," which "consists of [Annamalai's own] handwritten orders" that were apparently signed by special judge Charles D. Bridges. *See id.*; *see also* Dkt. 6-9 at 3. From what I can gather, the basis of the "final order of specific performance" is the alleged failure of numerous "account debtors," who Annamalai alleges stand "in privity" with Kalyani, to respond to Annamalai's non-party discovery requests. *See Annamalai II*, 2024 WL 4599935, at *4–5; *Annamalai I*, 2024

---

[1] *Available at* https://public.courts.in.gov/mycase/#/vw/Search.

WL 3694446, at *1; Dkt. 6-11. Annamalai alleges that the "account debtors" include BOP officials. *Annamalai I*, 2024 WL 3694446, at *1; Dkt. 6-10. Even though Judge Bridges apparently signed it, the "final order of specific performance" has been described by courts as "extraordinarily odd" and "nonsensical." *Annamalai II*, 2024 WL 4599935, at *4. There's no clear indication that any "account debtor" received notice of the Vigo County case. *See Annamalai II*, 2024 WL 4599935, at *5.

### B. Incident report and disciplinary hearing

On January 1, 2016, Annamalai received incident report 2799999, which was prepared by T.C. Brown. Dkt. 27-4 at 3. Brown wrote that, on December 15, 2015, Annamalai completed an unauthorized three-way call. *Id.* Specifically, Brown wrote that Annamalai called Ashok and asked him to put Deepa "into the conference call." *Id.* Brown also wrote that Ashok asked Annamalai if Ashok could "put into conference," after which there was a "series of beeps, accompanied by background noise and echoing." *Id.* According to Brown, after Annamalai briefly spoke with "Rakesh," the call was passed onto Deepa. *Id.* Brown noted that the '999 report was based on review of a transcript of the phone call, which was translated to English from Tamil by an outside interpreter, Babaprasanna Padmanabhan. *Id.*; Dkt. 27-4 at 3, 14–22; Dkt. 27-5 at 1.

The incident report was delivered to Annamalai on January 1, 2016. Dkt. 27-4 at 1, 3; Dkt. 27-5 at 1. The investigator, C. Royal, noted that Annamalai was advised of his right to remain silent and his rights under the "Inmate Disciplinary Process," and that Annamalai said that he understood his rights. Dkt. 27-4 at 6. The incident report was referred to the unit disciplinary committee, which K. Hill chaired. *Id.* at 3, 6.

On January 4, 2016, Hill presented Annamalai with: (1) a "Notice of Discipline Hearing" form; and (2) an "Inmate Rights at Discipline Hearing" form. *Id.* at 4–5; Dkt. 27-5 at 1. Hill noted that Annamalai refused to sign both forms. Dkt. 27-4 at 3–4. Annamalai told Hill that Padmanabhan's transcript was wrong and that Annamalai wanted a disinterested third-party to prepare another transcript. Dkt. 27-4 at 4; Dkt. 27-5 at 1. This request was denied because "a translation from a third-party contracted certified linguist [had been] provided in accordance with policy and procedure." Dkt. 27-5 at 1. Due to the seriousness of the charge, Hill recommended the incident report to the disciplinary hearing officer (DHO). Dkt. 27-4 at 3. Hill also recommended a "max loss [of] good time and privileges." *Id.*

Annamalai's disciplinary hearing was conducted by DHO Crews on February 23, 2016. Dkt. 27-5 at 1. According to Crews's disciplinary hearing report, Annamalai's staff representative, Mr. Price, stated that Annamalai received copy of Padmanabhan's transcript before the hearing. Dkt. 27-5 at 1. Annamalai made a statement, generally asserting that the transcript was inaccurate and that Ashok simply handed Ashok's cell phone over to the other individuals whose voices were heard during the phone call. *Id.* at 1, 3.

Annamalai asked to present Padmanabhan as a witness. *Id.* Crews denied this request, concluding that Padmanabhan "would have no further information to add . . . as he merely performed the job he [was] contracted to do." *Id.* at 1; *see also id.* at 9.

Crews found that Annamalai committed the act as charged. *Id.* at 4. Crews explained that it was clear, based primarily on Padmanabhan's transcript and the audio recording, that Annamalai had Ashok make a three-way call. *See id.* at 9. Crews also explained that Annamalai's three-way call circumvented phone procedures and interfered with staff's ability to monitor the

4

call. *Id.* Consequently, Crews disallowed 27 days of good-conduct time. *Id.* It was documented that Annamalai received a copy of Crews's decision. *Id.* at 10.

## ANALYSIS

**A.  Preliminary matters**

Two motions are pending. In the first motion, Annamalai asks for: (1) an emergency status hearing and oral argument; (2) a copy of the docket sheet; and (3) copies of orders entered since October 2024. Dkt. 51 at 2. In his second motion, Annamalai acknowledges receipt of a docket sheet from the clerk's office and withdraws the second and third requests. Dkt. 53 at 1–2.

That leaves Annamalai's first request for a status hearing and oral argument, which I will deny. The request for a status hearing is now moot. Oral argument is not appropriate because, as explained below, the paper record conclusively shows that Annamalai's amended petition lacks merit. An evidentiary hearing is not warranted for the same reason. *See* Dkt. 33 and Dkt. 49.

**B.  Merits of amended petition**

Annamalai challenges his disciplinary sanction on two grounds. First, Annamalai contends that BOP officials denied him procedural due process during the disciplinary proceedings, primarily because: (1) Annamalai didn't receive a copy of the incident report; (2) Annamalai didn't get to review the audio recording or transcript of the phone call before the disciplinary hearing; (3) Price was ineffective because he first met with Annamalai four minutes before the disciplinary hearing, failed to contact Annamalai's witnesses, and failed to obtain a second translation of the phone call; (4) Annamalai didn't get to present witnesses or

a second translation of the phone call at the disciplinary hearing; (5) Annamalai was wrongfully found guilty based on an inaccurate translation of the phone call; and (6) Annamalai received an inadequate hearing from the unit disciplinary committee. *See* Dkt. 5 at 6–7; Dkt. 23 at 1, 3. Second, Annamalai contends that he received the incident report as an act of retaliation because he had obtained the "final order of specific performance" against BOP officials in the Vigo County case. *See* Dkt. 5 at 7.

### 1. Procedural due process claim

As a general rule, due process requires prisoners in disciplinary hearings to receive: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence . . . ; and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). "[S]ome evidence" must support Crews's decision. *Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Smith v. Bezy*, 141 F. App'x 479, 481 (7th Cir. 2005).

Annamalai hasn't developed any argument on the second requirement and, on the fourth requirement, the evidence is that Annamalai received a copy of Crews's decision. Dkt. 27-5 at 1. My analysis is limited to the first and third requirements, and to whether some evidence supported Crews's decision.

On the first requirement, advanced notice, the evidence is that the incident report was delivered to Annamalai on January 1, 2016. 27-4 at 1, 3; Dkt. 27-5 at 1. The evidence is also that, three days later, Hill presented Annamalai with both the notice of discipline and inmate rights forms, though he refused to sign them. *Id.* at 4–5; Dkt. 27-5 at 1. Annamalai does not dispute that, during the interaction with Hill, Annamalai said that the transcript of the phone

6

call was wrong and that he wanted a second translation. Annamalai made that request, so he must have been aware of the claimed violation. The evidence shows that Annamalai received ample advanced written notice of the disciplinary charge.

The next issue is whether, under the third requirement, Annamalai received an opportunity to call witnesses and present documentary evidence. I begin with witnesses. The rule that a prisoner has a right to call witnesses at a prison disciplinary hearing is not absolute. Prison officials have discretion to refuse to allow witnesses for "irrelevance" or "lack of necessity." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).

Crews denied Annamalai's request to present Padmanabhan as a witness based on relevance. Crews explained that Padmanabhan would have no further information to provide because he simply performed his contracted job. Dkt. 27-5 at 1, 9. Annamalai hasn't submitted any evidence that Padmanabhan would have provided any information helpful to his defense; Annamalai's own speculation does not support that inference. *See Ryan v. Emmerich*, No. 25-cv-248-jdp, 2025 WL 3003941, at *2 (W.D. Wis. Oct. 27, 2025); *see also Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]"). Crews's decision to exclude Padmanabhan as a witness didn't violate due process.

Annamalai also faults the government for not allowing him to call Ashok and Annamalai's wife, who Annamalai contends would have testified that he didn't conduct a three-way call. *See* Dkt. 47 at 3. But the record of the disciplinary hearing indicates that Annamalai didn't seek to present his wife or Ashok as witnesses. *See* Dkt. 27-5 at 3. Even if Annamalai sought to present these individuals as witnesses, the audio recording and transcript conclusively established that Annamalai made a three-way call. The transcript says that Annamalai asked Ashok to put Deepa "into the conference call." Dkt. 27-4 at 15. Ashok then

7

asks, "Can I put into conference?," after which there was a series of beeps accompanied by background noise and echoing. *See id.* at 3, 15–16. After that, Annamalai speaks with Deepa. *Id.* at 16–22. Any testimony by Ashok, Annamalai's wife, or any other potential witness would have been flatly contradicted by the audio recording and transcript. So, any decision by Crews to exclude these individuals as witnesses did not violate due process.

That leaves, under the third requirement, the issue of documentary evidence. Harmless error analysis applies when a court reviews a procedural due process challenge to a prison disciplinary proceeding. *See Jones v. Cross*, 637 F.3d 841, 846–47 (7th Cir. 2011). So Annamalai cannot obtain relief if he suffered no prejudice from a violation of his procedural rights. *See id.*

Regarding documentary evidence, Annamalai faults the government for failing to obtain a second translation of the phone call for use at the disciplinary hearing. The evidence is that Price sought to obtain a second transcript but was unsuccessful because of the cost and other barriers. *See* Dkt. 27-5 at 1. Even if it was feasible for the government to obtain a second transcript, Annamalai only speculates that it would have provided exculpatory evidence. Annamalai's speculation doesn't support an inference that a second transcript would have allowed Annamalai to prevail at the hearing or otherwise obtain a more favorable outcome. *See Ryan*, 2025 WL 3003941, at *2; *see also Garlotte*, 515 U.S. at 46. If the government's failure to obtain a second copy of the transcript was constitutional error, the error was harmless.

The next issue is whether "some evidence" supported Crews's decision. The "some evidence" requirement is quite lenient; sanctions imposed in a prison disciplinary hearing are subject to the "narrowest judicial review." *See United States v. Kizeart*, 505 F.3d 672, 675 (7th Cir. 2007). The issue is whether there is any evidence in the record, even just a "modicum," that could support the hearing officer's decision. *Hill*, 472 U.S. at 455–56. "Ascertaining

whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

This lenient standard is easily satisfied based on the transcript showing that Annamalai had Ashok arrange a three-way call with Deepa. Making a three-way call violated prison policy by circumventing BOP staff's ability "to monitor frequency of telephone use." 28 C.F.R. § 541.3, Table 1, Prohibited Act Code 297. Annamalai says that the transcript was inaccurate but, again, there's no probative evidence to support that statement.

Also, the transcript is corroborated in part by the audio recording of the phone call. After listening to the recording, Brown noted that there was a "series of beeps, accompanied by background noise and echoing." Dkt. 27-4 at 3. Likewise, the transcript says that, after Ashok asked Annamalai if Ashok could "put into conference," Annamalai told Ashok not to "switch on the speaker as it [was] echoing." *Id.* at 15. Ashok responded that Ashok was "speaking as usual" and "talking on the regular," after which Annamalai said that Annamalai was still "getting echoes." *Id.* at 15–16. Annamalai then asked Ashok to check whether "they [were] *online*." *Id.* at 16 (emphasis added). These statements support Brown's report that there was background noise and echoing in the call after Annamalai asked Ashok to put Deepa into the conference call, and they further show that Annamalai had Ashok arrange a three-way call instead of merely asking him to turn on the speaker to Ashok's cell phone so that Annamalai could speak with nearby individuals. Some evidence easily supported Crews's finding of guilt.

Procedural due process does not protect the three other rights that Annamalai contends that he was denied during his disciplinary proceeding. First, Annamalai says that he didn't get to review the audio recording or transcript of the phone call before the disciplinary hearing. But Annamalai does not have an automatic right to review the government's evidence before

the disciplinary hearing. *See Williams v. Brown*, No. 17-cv-11-bbc, 2017 WL 782958, at *3 (W.D. Wis. Feb. 28, 2017). Prisoners "are entitled to have *exculpatory* evidence disclosed unless its disclosure would unduly threaten institutional concerns." *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (emphasis added). The audio recording and transcript, however, were incriminating. Also, Annamalai had an opportunity to challenge the audio recording and transcript at the disciplinary hearing, during which Crews considered his lengthy written statement. Dkt. 27-5 at 3–4.

Second, Annamalai contends that Price was ineffective because Price met with Annamalai four minutes before the disciplinary hearing, failed to contact Annamalai's witnesses, and failed to obtain a second translation of the phone call. But there's no constitutional entitlement to the assistance of a staff representative in prison disciplinary proceedings if the prisoner is literate and the case is not complex. *See Wolff*, 418 U.S. at 570; *Aguilar v. Endicott*, 224 F. App'x 526, 528 (7th Cir. 2007). Annamalai, a prolific litigator, is literate, and the issues in his disciplinary proceeding were straightforward.

Third, Annamalai contends that he received an inadequate hearing from the unit disciplinary committee. But there's no due process entitlement to a unit disciplinary committee hearing. *See Ohiegbu v. Werlinger*, 488 F. App'x 585, 586 (3d Cir. 2012); *Brown v. Rios*, 196 F. App'x 681, 683 (10th Cir. 2006); *Alcorn v. Daniels*, No. 16-cv-418, 2019 WL 4735831, at *3 (S.D. Ill. Sept. 27, 2019).

I will deny the petition on Annamalai's procedural due process claim.

2.  **Retaliation claim**

Annamalai contends that he received the incident report as an act of retaliation because he had obtained the "final order of specific performance" against BOP officials in the Vigo County case.

To establish a retaliation claim, Annamalai must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was at least a motivating factor in the BOP official's decision to take the retaliatory action. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). I limit my analysis to the third element, causation.

To establish that Brown, who wrote the incident report, was motivated to retaliate based on Annamalai's state-court litigation, Annamalai must show that Brown had actual knowledge of that litigation. *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021); *Healy v. City of Chicago*, 450 F.3d 732, 740 (7th Cir. 2006).

Annamalai does not clearly allege that Brown had actual knowledge of the Vigo County case. Furthermore, it's unlikely that Brown had actual knowledge of that case when Brown isn't a party to it and there's no clear indication that Brown received notice of any proper third-party discovery request. But even if Brown knew about that state case, the disciplinary record conclusively shows that Brown based the incident report on Annamalai's participation in a three-way call in violation of BOP policy. Regardless of retaliatory motive, a prisoner can't win a retaliation claim for a conduct report given for a legitimate reason. *See Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015). Again, the record shows that Annamalai received the incident report for a legitimate reason, i.e., his participation in a three-way call.

11

ORDER

IT IS ORDERED that:

1.  Petitioner Annamalai Annamalai's amended petition, Dkt. 5, is DENIED.

2.  Petitioner's emergency motion for status hearing and oral argument with request for docket sheet, Dkt. 51, is DENIED in part as moot and otherwise DENIED.

3.  Petitioner's verified motion to amend his emergency motion, Dkt. 53, is GRANTED solely to amend the emergency motion but otherwise DENIED.

4.  The clerk of court is directed to enter judgment and close the case.

Entered December 23, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge